IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL HOWARD,                )
                               )
         Plaintiff,            )
    v.                         )    1:18CV156
                               )
NANCY A. BERRYHILL,            )
Acting Commissioner of Social  )
Security,                      )
                               )
                               )
         Defendant.            )

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michael Howard brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.[1]

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on or about December 13, 2013, alleging a disability onset date of November 21, 2013. (Tr. 1184-87, 1188-96.)[2] The applications were denied initially and upon reconsideration. (*Id.*

---

[1] Defendant filed a motion for judgment on the pleadings (Docket Entry 13) and a second motion for judgment on the pleadings as a "corrected filing." (Docket Entry 15.) The Court will thus recommend that Defendant's original motion for judgment on the pleadings (Docket Entry 13) be denied as moot.

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 8.)

at 1073-77, 1081-83, 1089-90.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 1099-1100.)  After a hearing, the ALJ determined that Plaintiff was not disabled under the Act.  (*Id.* at 929-46.)  The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review.  (*Id.* at 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow.  *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920.  *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  The ALJ determined at step one that Plaintiff

---

[3] "The Commissioner uses a five-step process to evaluate disability claims."  *Hancock v. Astrue*,

2

had not engaged in substantial gainful activity since the alleged onset date of November 21, 2013. (Tr. 931.) He next found the following severe impairments at step two: "congestive heart failure, chronic kidney disease with anemia, diabetes mellitus-type I, hypertension and anxiety." (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 932-33.) He next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform a reduced range of sedentary work in that he

> should alternate between sitting and standing every hour. The claimant is limited to frequent ramp and stair climbing but precluded from rope, ladder and scaffolds climbing. The claimant should avoid heights and hazards. The claimant is further limited to simple, routine and repetitive tasks in a stable work environment with few changes. He is limited to work at a non-production pace with occasional contact with the public and frequent but not constant with supervisors and co-workers. The claimant can stay on task for 2-hours at a time but no longer.

(*Id.* at 934.) At the fourth step, the ALJ determined that Plaintiff was unable to perform his past relevant work as an airplane cleaner, supervisory airplane cleaner, sales associate and department manager. (*Id.* at 944.) Last, at step five, the ALJ determined that there were jobs

---

667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

in the national economy that Plaintiff could perform. (*Id.* at 945.) Consequently, he concluded that Plaintiff was not disabled. (*Id.* at 945-46.)

**IV. ISSUES AND ANALYSIS**

Plaintiff raises two issues on appeal. First, Plaintiff contends that the ALJ erred in law by misstating the evidence of record. (Docket Entry 12 at 4-8.) Next, Plaintiff contends that the ALJ erred in law in his consideration of Plaintiff's opinion evidence. (*Id.* at 8-14.) For the following reasons, these arguments lack merit.

**1. The ALJ properly considered the evidence of record.**

Plaintiff argues that the ALJ erred in law by misstating the evidence within the record. (*Id.* at 4-8.) At the base of Plaintiff's argument is a challenge to his RFC.[4] RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.,* pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in

---

[4] Plaintiff challenges findings that the ALJ made regarding Plaintiff's gastroparesis. (Docket Entry 12 at 5-6.) Plaintiff points to the portion of the ALJ's decision whereby he makes a determination of Plaintiff's severe and non-severe impairments. (Tr. 932.) Plaintiff does not challenge the finding of his gastroparesis as a non-severe impairment. In any event, had any error occurred at two step, Plaintiff suffered no harm as "[a] finding of a single severe impairment at step two of the [SEP] is enough to ensure that the factfinder will progress to step three." *Sawyer v. Colvin*, 995 F. Supp. 2d 496, 509 (D.S.C. 2014). Thus, if the ALJ properly considered all of Plaintiff's impairments in assessing his RFC, there is no reversible error. *Miller v. Astrue*, No. CIV.A. 8:10-1142-HMH, 2011 WL 1576203, at *15 (D.S.C. Apr. 7, 2011) (citation omitted), *report and recommendation adopted sub nom. Miller v. Comm'r, Soc. Sec. Admin.*, No. CA 8:10-1142-HMH-JDA, 2011 WL 1561058 (D.S.C. Apr. 26, 2011) ("[T]he issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity.").

4

spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart,* 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 374184, at *1.

Here, in a lengthy and detailed decision, the ALJ carefully considered the relevant evidence in the context of the entire record in his determination of Plaintiff's RFC. The ALJ

5

first acknowledged Plaintiff's subjective complaints as noted at the hearing. (Tr. 935.) Plaintiff testified that he suffers from multiple impairments to include diabetes mellitus, congestive heart failure, hypertension, anemia, and kidney disease. (*Id.* at 935, 967, 973-74, 982, 988-89.) Plaintiff discussed having hypoglycemic and hyperglycemic episodes which lead to fluctuating blood sugar levels and excessive bathroom use. (*Id.* at 974.) He also experiences dizziness, suffers from fatigue, and has gastroparesis. (*Id.* at 974, 987.) He has vision problems, nerve damages in his fingers, and has difficulty walking due to pain, burning and a shooting sensation in his legs and feet. (*Id.* at 977-78, 980-81.) Plaintiff also testified that his kidneys are worsening, and he visits a nephrologist every three months. (*Id.* at 989.)

"After careful consideration of the evidence," (*id.* at 935), the ALJ determined that Plaintiff's symptoms were not entirely consistent with the medical evidence in the record. The ALJ concluded that overall, Plaintiff was "treated conservatively," he experienced no more than mild to moderate abnormalities, he did not require aggressive treatments or surgeries, and was in fact, experiencing "functional improvement." (*Id.*) More specifically, the ALJ acknowledged Plaintiff's cardiovascular problems, but noted that his symptoms improved after treatment including catheterization, medication, and dietary changes. (*Id.* at 935-937; *see also* Tr. 1480, 1758, 1761, 1916, 1919, 1940, 1964-65, 2009, 2029.) Given such evidence, the ALJ concluded that Plaintiff's cardiovascular problems did not limit him functionally. (*Id.* at 937.)

The ALJ also reviewed the evidence in regard to Plaintiff's history of chronic kidney disease and diabetes mellitus. (Tr. 937-40.) Plaintiff was often noncompliant with his diabetes

6

treatment regimen, which contributed to his chronic kidney disease (*Id.*; *see also* Tr. 1758 (noting Plaintiff's ongoing frustration with diabetes mellitus).) By November 2014, Plaintiff more consistently checked his glucose levels, followed his physician's meal plan, and took insulin as directed. (*Id.* at 939, 1671.) Nurse Practitioner Helen Trahan noted that Plaintiff's glycemic control had "improved significantly." (*Id.* at 1675.) By February 2015, his glycemic control had improved, as did his lower extremity edema. (*Id.* at 937, 1761.) In June 2015, Dr. Charles Stoddard observed that Plaintiff's renal function was stable. (*Id.* at 937, 1760.) Dr. Tony Walden, M.D., noted continued improvement in Plaintiff's diabetes in June 2015 and September 2015. (*Id.* at 1873, 1893.) Plaintiff reported issues with swelling in his legs and vision problems, but the ALJ pointed to evidence demonstrating that both of those problems improved by July 2016. (*Id.* at 940, 2672-73.) The ALJ ultimately concluded that once Plaintiff "was able to obtain the insulin pump, monitored his glucose, adhered to his diet" and took his medications as prescribed, his was not prohibited from "the performance of sustained work activity" as a result of his diabetes. (*Id.* at 940.)

The ALJ also discussed Plaintiff's mental health problems and complaints of anxiety and depression. (*Id.* at 940-41.) Plaintiff did not receive specialized mental health treatment. During a consultative psychiatric examination, Dr. Carla Duszlak noted Plaintiff's lack of psychiatric treatment for depression and anxiety. Plaintiff did report taking Zoloft, Lexapro, Prozac and Wellbutrin for his anxiety and depression. (*Id.* at 1500.) Dr. Duszlak noted that Plaintiff's mood was depressed and his affect was very bland. (*Id.* at 1501.) However, Plaintiff was oriented to time, place and person. (*Id.*) Plaintiff was diagnosed with panic disorder with

7

agoraphobia, and adjustment disorder with anxiety and depressed mood. (*Id.* at 1502.) Dr. Duszlak concluded that Plaintiff could perform simple and repetitive tasks, accept instructions from supervisors, and interact well with co-workers and the public. (*Id.* at 1503.) The ALJ ultimately concluded that Plaintiff's mental health difficulties do not preclude all work activity. (*Id.* at 941.)

Next, the ALJ also considered Plaintiff's activities. (*Id.* at 941-42.) For example, although the majority of Plaintiff's severe impairments are longstanding conditions, Plaintiff worked until November of 2013. (*Id.* at 941, 964.) He prepared meals, performed household chores, and shopped. (*Id.* at 941, 1501.) His mother reported that he cared for his pet cats; performed light household chores; drove; shopped in stores; managed his finances; and used a computer. (*Id.* at 1244-47.) He also traveled during the relevant period, including traveling to Mexico and Las Vegas in 2014. (*Id.* at 941, 1671, 2798.) The ALJ also noted that Plaintiff has lived independently despite his various impairments. (*Id.* at 942.) The opinion evidence was also weighed by the ALJ. (*Id.* at 942-44.)

Upon review of these findings, the undersigned concludes that substantial evidence supports the RFC assessment. Plaintiff's arguments to the contrary are unpersuasive. Plaintiff argues that the ALJ misstated several points and essentially "cherry-picked" the evidence to support his decision. (Docket Entry 12 at 5.) Plaintiff cites to the ALJ's conclusion that there were no complaints of recurrent symptoms associated with gastroparesis. (Tr. 932.) At the hearing, Plaintiff and his counsel pointed out his gastroparesis. (*Id.* at 963, 973-74.) Plaintiff also points to his discussion of his gastroparesis with doctors at Duke Health and Carolina

8

Internal Medicine. (Docket Entry 12 at 6-7; Tr. 1916, 2135.) However, even after discounting any misstatements by the ALJ, the undersigned finds that given the dearth of evidence to support the RFC assessment, any misstatement is harmless. In other words, "it is inconceivable that the ALJ would have reached a different decision even had he correctly described Plaintiff's [gastroparesis]." *Barnes v. Colvin*, No. 5:12-CV-696-D, 2013 WL 6985182, at *13-14 (E.D.N.C. Nov. 13, 2013) (unpublished), *report and recommendation adopted,* No. 5:12-CV-696-D, 2014 WL 126059 (E.D.N.C. Jan. 13, 2014) (unpublished). Indeed, the evidence that Plaintiff's points to himself supports this conclusion. (*See* Tr. 1916 (mentioning gastroparesis solely in relation to Plaintiff iron deficiency anemia and concluding that Plaintiff's last iron levels were reasonable); 2135, 2137 (indicating that Plaintiff needed a diet for gastroparesis).)

Plaintiff also points to the ALJ's misstatement regarding evidence of peripheral edema in Dr. Santosh Rao's physical examinations. (Docket Entry 12 at 7; Tr. 936.) The ALJ misstated that there was no evidence of peripheral edema related to this physician, however Plaintiff points to Dr. Rao's physical exam on May 2, 2014 showing peripheral pitting edema. (Tr. 2845.) Again, it is inconceivable that this one examination noting a "trace [of] peripheral pitting edema" (*see id.*) in May of 2014 would have altered the RFC findings. Other evidence in the record demonstrated several instances noted by the ALJ in which there was no evidence of edema. (*Id.* at 932, 2016, 2091, 2181; *see also* Tr. 1758 ("LE edema is well controlled.").)

Lastly, Plaintiff points to the ALJ's findings regarding his diabetes and argues that the ALJ did not consider the fact that Plaintiff's non-compliance was through no fault of his own.

9

(Docket Entry 12 at 7 *referencing* Tr. 938.)  It was reported in August of 2013 that Plaintiff was having difficulty affording his medication.  (Tr. 1431.)   In his decision, the ALJ did state that during a November 2013 doctor's visit, Dr. Walden noted that Plaintiff was previously on insulin pump therapy and requested to reinitiate the therapy under his employer health plan but the cost was not covered.  (*Id.* at 938, 1472.)  However, Plaintiff did expect the costs for his diabetes supplies to be available to him in 2014.  (*Id.*)  Additionally, beyond affordability, the ALJ also noted that in May and June of 2014, Plaintiff reported that he forgot to take his evening dose of Lantus frequently, and also reported a problem with hyperkalemia secondary to eating a large potato at night.  (*Id.* at 939, 1629, 1644.)

In sum, the ALJ conducted a thorough summary of the entire medical record and his RFC findings are supported by citations to that record.  Although it is true that "the ALJ cannot cherry-pick the evidence that supports his decision to the exclusion of evidence favorable to the claimant," *Dowell v. Colvin*, No. 1:12CV1006, 2015 WL 1524767, at *4 (M.D.N.C. Apr. 2, 2015) (unpublished), the ALJ did not do that here.  Instead, he relied upon an accurate portrayal of Plaintiff's longitudinal treatment history to support his finding of non-disability.  *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'") (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Plaintiff's argument, thus fails.

### 2. The ALJ did not error in weighing the medical opinion evidence.

Plaintiff next argues that the ALJ erred in law in his consideration of Plaintiff's opinion evidence, namely the opinions of Plaintiff's treating cardiologist, Dr. Rao, and the state agency consultants. (Docket Entry 12 at 8-14.) This argument also fails.

#### A. Dr. Rao's Opinion

Plaintiff argues that the ALJ improperly weighed the opinion of Dr. Rao. (*Id.* at 9-14.) The "treating physician rule" generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2). An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Opinions by physicians regarding the ultimate issue of whether a claimant is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(d), 416.927(d). In instances where an ALJ decides not to give controlling weight to a treating physician, he must adequate explain his reasoning. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the explanation given is insufficient, it "preclude[s] [the Court's] ability to undertake the 'meaningful review' with which we are tasked on appeal." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017) (citing *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)).

Here, on April 24, 2014, Dr. Rao wrote an opinion letter in support of Plaintiff's disability. Dr. Rao wrote:

> Mr. Howard is a patient of mine whom I care for from a cardiac standpoint. His diagnosis includes: coronary artery disease with a non-ischemic cardiomyopathy and chronic systolic heart failure.
>
> Due to his current medication regimen and the cardiomyopathy, he is very symptomatic with chronic tiredness and easy fatigue-ability. He does have difficulties with activities of daily living and cannot stand for more than 20 minutes at a time nor lift greater than 20 lbs.
>
> Unfortunately, adjusting his medication is not an option at this time, for it is currently sustaining his LV function. I do feel that it would be reasonable for him to pursue disability coverage.

(Tr. 2790.) The ALJ gave this opinion little weight and stated the following reasons:

> The opinion was provided shortly after the claimant's diagnosis of coronary artery disease, cardiomyopathy and chronic systolic heart failure and does not provide a longitudinal picture of the claimant's impairment related limitations and restrictions. Further, the evidence as a whole does not support Dr. Rao's opinions. In fact, when the claimant presented for a consultative

12

examination, just one month prior, as stated previously [in the decision] he indicated that his daily activities included cooking and performing household chores with rest breaks. The claimant did not indicate at that time, that he was limited to standing for 20 minutes or lifting 20 pounds (Exhibit 7F). Also, I note that there is evidence of functional improvement with treatment, which includes numerous medications. In March 2014, Dr. Rao noted that the claimant's 2-D echocardiogram revealed improvement of his heart function to 40-45% (Exhibit 48F/32). Subsequently, in November 2014, Dr. Rao noted that the claimant's LV function improved with the use of Coreg and Bidil (Exhibit 49F/85). Conditions that are controllable with medications are not "disabling", *Gross v. Heckler*, 785 F.2d 1163 (4th Cir 1986), citing *Purdham v. Celebreez*, 349 F.2d 828 (4th Cir. 1965). Further, as discussed in detail [in the decision], there is substantial evidence in the record showing that despite the claimant's impairments, he can perform a range of "sedentary" work. In fact, the claimant engages in a variety of daily activities suggestive of greater mental and physical abilities.

Also, Dr. Rao's opinions are not consistent with other opinions found in the record. For example, Dr. Velezquez who evaluated the claimant in November 2016 noted that the claimant described New York Heart Association Class III symptoms, which seemed somewhat disproportional to his degree of cardiac dysfunction . . . .

Lastly, statements that a claimant is "disabled," "unable to work," can or cannot perform a past job, meets a Listing, or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate her statutory responsibility to determine the issue of disability . . . .

(Tr. 943-44 (emphasis added)).

Here, the ALJ considered the relevant factors and provided a thorough assessment as to weight given to the opinion of Dr. Rao. Plaintiff's arguments to the contrary are unpersuasive. Plaintiff argues that a lack of a longitudinal record should not have been used

13

as a basis to give Dr. Rao's opinion little weight. (Docket Entry 12 at 11.) He further argues that the opinion was supported by the evidence of the record. (*Id.* at 11-13.) However, as detailed above, the ALJ reasonably discounted Dr. Rao's opinion for several reasons. First, the ALJ was correct in noting that the ultimate issue of whether Plaintiff is disabled is administrative and therefore reserved for the Commissioner, not Dr. Rao. 20 C.F.R. §§ 404.1527(d), 416.927(d). Second, the ALJ reasonably discounted Dr. Rao's opinion because it was inconsistent with the medical record, and the ALJ gave an example. As stated above, Dr. Rao's opinion was inconsistent with the longitudinal record, which revealed that Plaintiff's cardiac conditions improved with treatment. (Tr. 935, 937, 943-44, 1758, 1761, 1916, 1919, 1940, 2029.) Also, the ALJ properly noted that Dr. Rao's opinion was inconsistent with Plaintiff's daily activities, including cooking and performing household chores with rest breaks. (Tr. 943.) In early 2014 a few months before Dr. Rao rendered his opinion, Plaintiff was able to travel to Mexico. (Tr. 941, 2798.) In October of 2014, several months after Dr. Rao rendered his opinion, Plaintiff reported that he walked long distances on a trip to Las Vegas (Tr. 941, 1671, 1944.) Lastly, any failure to further discuss Plaintiff's fatigue and tiredness is harmless as he noted it elsewhere in the decision. (*See* Tr. 935-36, 938.)

In sum, the substantial evidence supports the ALJ's findings regarding Dr. Rao's opinion. Thus, Plaintiff's argument fails.

B. <u>State Agency Medical Consultants</u>

Plaintiff also argues that the ALJ erred by giving conflicting weights to the opinion evidence of the state agency medical consultants. (Docket Entry 12 at 9.) Regardless of the

14

source, every medical opinion received must be evaluated. 20 C.F.R. §§ 404.1527(c); 416.927(c). State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1). Here, the ALJ evaluated the medical opinions of the state agency medical consultants. (Tr. 942.) Plaintiff argues that the Court is left to wonder what weight was given to the medical consultants because the ALJ indicated "great weight" and "some weight" in his opinion. (Docket Entry 12 at 9; *see also* Tr. 942.) Even assuming arguendo and in the light most favorable to Plaintiff, a finding of "some weight" given to the medical consultants is supported by substantial evidence. Upon review of the record, it is apparent that the ALJ gave some weight to the opinion of Dr. Frank Virgili who opined that Plaintiff could perform work at the "light" exertional level. (Tr. 942, 1045-46, 1065-66.) The ALJ ultimately determined that the RFC assessment as set forth in the decision was more restrictive by limiting Plaintiff to a reduced range of "sedentary" work, "in light of the objective medical evidence received at the hearing level and giving maximum credit to the claimant's testimony at the hearing." (Tr. 942.) Having considered the entire record, the RFC assessment is supported by substantial evidence and Plaintiff's argument fails.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the

Pleadings (Docket Entry 13) be **DENIED AS MOOT**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

December 27, 2018
Durham, North Carolina